**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KIMBERLY COLTON,**

                  **Plaintiff,**

  **-against-**                                               **5:14-CV-00801**

**STATE OF NEW YORK DIVISION OF**
**STATE POLICE,**

                  **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I.   INTRODUCTION

Plaintiff Kimberly Colton, a State Trooper employed by the New York State Police ("State Police" or "Police"), alleges employment discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 290, *et seq.* ("the Human Rights Law"). *See* Am. Compl. Dkt. # 40. Defendant moves to dismiss part of Plaintiff's Amended Complaint. Dkt. # 44. Plaintiff opposes the motion, Dkt. # 49, and Defendant has filed a Reply. Dkt. # 51. The Court decides the motion on the basis of the parties' submissions without oral argument. For the reasons that follow, the motion is granted in part and denied in part.

1

## II.     BACKGROUND

### a.  Procedural History

On July 2, 2014, Plaintiff filed a complaint alleging violations of Title VII and the Human Rights Law. Compl., dkt. # 1.

Attached to the Complaint is a Charge of Discrimination that Plaintiff dual filed with the New York Division of Human Rights and the Equal Employment Opportunity Commission on August 29, 2013 ("EEOC Charge"). Dkt. # 1-1.  Plaintiff alleges that she has been subjected to "harassment, hostile work environment, and discrimination based on sex." *Id.*  She states that she has "been employed by the New York State Police since 10/30/00. [Her] current position is a State Trooper. [She has] been stationed out of State Police (SP) Barracks in Auburn for approximately 10 years." *Id.*  Plaintiff further alleges that "[t]he harassment and hostile work environment has been ongoing for approximately the last 8 years." *Id.*

Specifically, Plaintiff complains about actions taken by her supervisors from 2011 to 2013.  She asserts that prior to being temporarily out of work due to an injury suffered on July 30, 2011, "Station Commander(SC) / Sgt. Mazur and Captain Gallivan initiated a complaint against me for not thoroughly investigating a damaged mailbox.  Just prior to this, I had filed a [*sic*] improper practice charge against Captain Gallivan for denying me a hardship request due to the fact that I 'ticked him off.'" *Id.*  Plaintiff contends that the situation resulted in Capt. Gallivan initiating a personnel complaint against her resulting in her receiving a letter of censure and losing one day of vacation time. *Id.*  Plaintiff complains about receiving an unsatisfactory evaluation after she returned to duty following

her injury, about the nature of her assignments, and the way she was treated with regard to her post assignments. *Id.*[1]

Plaintiff also alleges in the EEOC Charge that after persisting to be assigned to a specific shift on which she was the senior member, Sgt. O'Brien changed the past practice that allowed the senior member of a platoon to complete the post assignments. *Id.* Under the new procedure, all post assignments are completed by the supervisor and rotated between platoon members. *Id.*

Plaintiff repeated many of the same allegations in her Complaint. *See* dkt. # 1. In lieu of answering, Defendants[2] filed a motion to dismiss the Complaint. Dkt. # 25. Thereafter, the Court issued a Decision and Order granting in part and denying in part Defendants' motion. Dkt. # 39.[3] The Court dismissed, with prejudice, the Title VII claims against Defendants Gallivan and O'Brien, and the Human Rights Law claims against the New York State Police and Gallivan and O'Brien in their official capacities. *See* dkt. # 39, p. 15. The Court also dismissed, without prejudice and with leave to re-plead, any gender-based discrete act discrimination claim, and Plaintiff's gender-based hostile work environment claims. *Id.*[4] The Court found that the Complaint alleged plausible claims of

---

[1] Plaintiff states in the EEOC Charge that on or around December 28, 2012, she requested to be placed on a certain shift. *See* Docket No. 1-1, p. 6. Her request had previously been denied by Gallivan and Zone Sergeant James W. O'Brien, purportedly for four reasons that Plaintiff does not detail in the EEOC Charge. *Id.* Plaintiff persisted in seeking her desired shift, asserting her seniority and requesting reasons for the denial. *Id.* She was later given the shift she had requested. *Id.*

[2] The original Complaint was against the State of New York Division of State Police, Captain Neil Gallivan, and Zone Sergeant James W. O'Brien. The Amended Complaint names only the State of New York Division of State Police as a defendant.

[3] The Court presumes familiarity with this Decision and Order.

[4] As to the discrete act disparate treatment discrimination claims that *might* have been asserted in the
(continued...)

3

a retaliatory hostile work environment and retaliation. *Id.*, pp. 14-15.

### b. Amended Complaint

The Amended Complaint, which is the subject of the instant motion, is nearly identical to the original Complaint with the addition of paragraphs 11, 13-18, 21-26, and 57, and portions of paragraphs 39, 49, 53-54, and 58. In paragraphs 11, 13-18, and 21-26, Plaintiff alleges that, in 2000, a supervisor at the New York State Police Academy sexually harassed her and compelled her to commit sex acts upon threat of termination from her position. *Id.*, ¶¶ 13-14. She alleges that, following her attendance at the Academy, the supervisor directed Plaintiff's Field Training Officer to "keep his hands off" Plaintiff. *Id.*, ¶ 15.

Plaintiff also alleges that in 2005, a Senior Trooper told her that "females don't belong on this job," that female troopers are "not capable of doing the same job as male

---

[4](...continued)
Complaint, the Court wrote:

> To the extent that Plaintiff asserts claims for discrete act disparate treatment discrimination in the First, Fourth, Fifth, or the Seventh Causes of Action, the pleading fails to meet the requirements of Fed. R. Civ. P. 8(a)(2). "[A] complaint must include ... a plain statement of the claim ... [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed.2d 1 (2002) (internal quotation marks and citation omitted) (discussing Fed. R. Civ. P. 8(a)(2)). The Complaint does not do this with regard to any discrete act disparate discrimination claims. Instead, the Complaint appears to assert discrete acts as part of the claims for a hostile work environment and/or retaliation, leaving the reader to speculate whether separate discrete act disparate treatment claims are also alleged. This fails to give Defendants sufficient notice as required by Rule 8(a)(2). *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). Thus, to the extent Plaintiff asserts separate discrete act disparate treatment discrimination claims in this case, the claims are dismissed with leave to re-plead.

Dkt. # 39, pp. 9-10 (footnotes omitted).

As to the gender-based hostile work environment claims asserted in the Complaint, the Court agreed with Defendants that the claims were insufficient because Plaintiff did not allege facts supporting a plausible inference that the alleged harassing conduct was motivated by Plaintiff's gender. *Id.*, pp. 10-13; *see id.* p. 13.

4

troopers," and that she would not receive a transfer to the Moravia station that she had requested. *Id.*, ¶ 22.  Plaintiff alleges that she was denied a transfer to the Moravia station by O'Brien in favor of a less senior fellow trooper who was male, being told that she was denied the transfer because she did not write enough tickets. *Id.*, ¶ 24.  However, Plaintiff alleges that the denial was motivated by consideration of her gender, and in retaliation for her complaint about comments made by the Senior Trooper. *Id.*, ¶ 25.

Plaintiff also adds allegations that: (1) she believes Gallivan and Sgt. O'Brien have treated her differently than her male counterparts because she is female, *id.,* ¶ 39; (2) a remark made by Sgt. O'Brien was motivated by gender-based discriminatory animus, *id.,* ¶ 49;[5] (3)  her differentiation in treatment was due to her gender, *id.,* ¶ 53; (4) Sgt. O'Brien

---

[5]Plaintiff alleges in the Amended Complaint:

49. In late 2011, Sgt. O'Brien, in his capacity as an employee of the NYS Police sexually harassed Plaintiff asking fellow NYS Police employees which trooper Plaintiff was "shacking up with" thereby creating a hostile work environment which has forced Plaintiff to work in a stressful environment making her job performance difficult. This comment by Sgt. O'Brien was sexually motivated with discriminatory animus based on gender.

50. That Plaintiff filed a formal complaint with Gallivan regarding Sgt. O'Brien's statement about "shacking up".

51. That Gallivan failed to conduct an investigation of this matter until approximately 11 months later when Major Mark Koss learned of this complaint and then ordered Gallivan to complete an investigation.

52. That upon information and belief, Sgt. O'Brien received a letter of censure as a result of the investigation.

53. That Defendant's male employees were not treated in the same manner as Plaintiff as Gallivan and Sgt. O'Brien treated other male employees differently than Plaintiff because Plaintiff was a female. The differentiation in treatment was on account of her gender.

54. Moreover, Sgt. O'Brien and Gallivan treated Plaintiff different from her male counterparts in creating a hostile work environment and in creating an adverse employment action against Plaintiff by purposefully giving Plaintiff negative performance evaluations because she failed to write write a specific amount of tickets while working.

55. As a specific example, in 2007, Plaintiff was told by Sgt. O'Brien that Plaintiff needed to quit her
(continued...)

5

and Gallivan treated her differently than her male counterparts, *id.,* ¶ 54; and, (5) she has "knowledge and information" to believe that her male counterparts were not treated similarly, and that she was singled out and discriminated against because of her gender, *id.,* ¶ 58.

The seven Causes of Action in the Amended Complaint are unaltered from those in the Complaint. *See* Dkt. # 40, pp. 12-19. The First, Second, Third, Sixth, and Seventh Causes of Action are claims alleging the creation of a hostile work environment, with the Second and Seventh based on retaliatory motives and the First, Third and Sixth based on gender animus. The Fourth Cause of Action alleges that "Defendant has also violated Title VII for [*sic*] discriminating against Plaintiff based upon her sex." Am. Compl. ¶ 84. In support of this claim, Plaintiff asserts: "Defendant's supervisors O'Brien and Gallivan have treated Plaintiff differently because of her gender. O'Brien's 'shacking up' remarks and Gallivan's treatment of Plaintiff of [*sic*] retaliation in the motions are gender-based

---

[5](...continued)
job unless Plaintiff felt issuing tickets was the most important part of her job. At that time, Sgt. O'Brien belittled and intimidated Plaintiff and instructed Plaintiff to issue more tickets or her job would be in jeopardy. Sgt. O'Brien's instructions to Plaintiff to issue more tickets was a violation of New York State law ("quota law").

56. As a result of not doing what Sgt. O'Brien and other supervisors instructed her to do, since 2007 and until 2014, Plaintiff received numerous negative performance evaluations for not issuing enough tickets all in violation of the quota law.

57. Given Sgt. O'Brien's "shacking up" remarks and Captain Gallivan's failure to conduct an investigation as well as all the other remarks made about or against Plaintiff, Plaintiff believes that Defendant's actions of giving Plaintiff numerous negative performance evaluations was gender-based motivated with discriminatory animus. Also, the fact that as a senior trooper, Plaintiff did not receive the post at SP Moravia when she was qualified and ranked shows retaliatory action constituting an adverse employment action.

58. This action by Defendant establishes retaliatory conduct in violation of Title VII based on Plaintiff's sex. Plaintiff has knowledge and information to believe that other male counterparts were not treated similarly and that she was singled out and discriminated because of her gender.

6

motivated animus [*sic*]." *Id.* ¶ 86. The Fifth Cause of Action alleges intentional discrimination in violation of the Human Rights Law.

### c. Parties' Arguments

Defendant points out that Plaintiff's allegations contained in paragraphs 13-18 (concerning her treatment at and after attending the New York State Police Academy in 2000) and 21-26 (concerning her treatment in 2005 while at the Moravia satellite station) in the Amended Complaint were not included in the EEOC Charge. Therefore, Defendant contends, any Title VII claims based upon these allegations are barred for failure to exhaust administrative remedies and for having been brought beyond the applicable statute of limitations. Defendant also contends that, to the extent Plaintiff's new allegations are brought pursuant to the Human Rights Law, such claims are barred by the applicable three-year such limitations. Moreover, Defendant argues that the Amended Complaint's gender-based discrimination claims suffer from the same deficiencies as the original Complaint, and, therefore, must be dismissed.

Plaintiff argues that she exhausted her administrative remedies on the Title VII claims because she alleged in the EEOC Charge "facts describing claims for sexual harassment, hostile work environment and retaliation." Moreover, she asserts that any claims not raised in the EEOC Charge may be brought here because the claims fall within the scope of the charge brought before the EEOC. "[I]t is Plaintiff's position that the additional factual allegations in the Amended Complaint are reasonably related to those alleged in the Charge and, therefore, are not time barred and are properly before this Court." Pl. Mem. L. p. 9. Plaintiff further argues that "the Charge and the Amended

7

Complaint contain enough factual amplification to render Plaintiff's sexual discrimination and hostile work environment claims plausible. Plaintiff has also alleged sufficient facts from which a plausible inference could be drawn that gender-based animus motivated the alleged sexual harassment she suffered." *Id.*

## III.   DISCUSSION

### a.  New York Human Rights Law Claims

Plaintiff's Amended Complaint asserts claims under the Human Rights Law. *See* Am. Compl. ¶¶ 5[6] and 90.[7]   Previously, the Court dismissed with prejudice all Human Rights Law claims against the New York State Police, and Gallivan and O'Brien in their official capacities, because such claims were barred by the Eleventh Amendment.  Dkt. # 39, pp. 8 & 15.  While the Amended Complaint references Gallivan and O'Brien (as well as other New York State police officers), only the State of New York Division of State Police is named as a defendant.  *See* Am. Compl., caption;[8] preamble;[9] and ¶¶ 1-2.[10] Indeed, the Amended Complaint uses the singular "defendant" throughout, describing the conduct she finds objectionable as having been committed by "Defendant."  *See generally*

---

[6]("This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, . . . , N.Y. Exec. Law §290 et seq. (the "Human Rights Law") and other civil tort and common law causes of action.")

[7]("As alleged herein, Defendant violated N.Y. Exec. Law § 290, et seq. (Human Rights Law) as amended for discriminating against Plaintiff based on her sex.")

[8] (naming only the "STATE OF NEW YORK DIVISION OF STATE POLICE" as the "defendant")

[9]("Plaintiff, KIMBERLY COLTON ("*Plaintiff*"), by and through her attorney . . ., as and for her Amended Complaint against Defendant, STATE OF NEW YORK DIVISION OF STATE POLICE ('*NYS Police*' or '*Defendant*'), alleges as follows:")

[10]("Parties: (1) [Plaintiff]. (2) Upon information and belief, Defendant NYS Police is a domestic business corporation organized and existing under the laws of the State of New York conducting business at a location at 1220 Washington Avenue, Building 22, Albany, New York.")

Am. Comp.

Because the action is brought by a represented party, and because the Amended Complaint names only the New York State Police as a defendant, any claim against any individual actor is deemed to have been abandoned. Further, because the Eleventh Amendment bars a state law claim against New York State for monetary damages, all claims in the Amended Complaint brought pursuant to the New York State Human Rights Law are dismissed.

### b. Exhaustion of Remedies - Title VII Claims

Before a federal court may review a claim under Title VII, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC or an appropriate state agency within 300 days of the unlawful discriminatory act. *See Fowlkes v. Ironworkers Local 40,* 790 F.3d 378, 383 (2d Cir. 2015); *Colquitt v. Xerox Corp.*, 546 Fed. Appx. 26, 28 (2d Cir. 2013). "The requirement that administrative remedies be exhausted is designed 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" *White v. N.Y.C. Dept. of Educ.*, 2008 WL 4507614 (E.D.N.Y. Sept. 30, 2008)(*quoting Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985) *and citing Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded on other grounds by Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998)). This statutory filing period is "analogous to a statute of limitations," *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996), and must be adhered to in order to vest the district court with jurisdiction to hear the claim. *See Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).

A district court may only hear Title VII claims that were included in a timely EEOC charge, or that are "reasonably related" to the discrimination alleged in the EEOC charge. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (*per curiam*). Unexhausted claims are "reasonably related" where (1) "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) the plaintiff is "alleging retaliation by an employer against an employee for filing an EEOC charge"; and (3) "a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402–03 (quotation and other citations omitted).

Three hundred days prior to August 29, 2013, the date Plaintiff filed her EEOC Charge, is November 2, 2012. Accordingly, any conduct occurring before November 2, 2012 cannot form the basis of a discrete act claim as such a claim is barred by the applicable statue of limitations.

Further, the EEOC Charge discusses only matters involving Gallivan, O'Brien, and Mazur, and alleges unfair scrutiny of Plaintiff's job performance, retaliatory treatment, and discrimination based on her gender. Accordingly, any claim concerning conduct by any other New York State police officers is not reasonably related to the investigation conducted by the EEOC, and thus any claims based on such other conduct are barred. *See Butts*, 990 F.2d at 1402-03.

Still further, Plaintiff has not alleged sufficient facts to plausibly establish that the 2000 and 2005 conduct was a part of a continuing pattern or practice of the employer

10

culminating in the conduct of which she complained about to the EEOC. *See Hills v. Praxair, Inc.*, 2012 WL 1935207, at *11 (W.D.N.Y. May 29, 2012)("The fact that these incidents occurred not once, but several times, is not enough to trigger application of the continuing violation doctrine. . . . To establish the kind of pattern or practice Plaintiff is alleging, he would instead need to present multiple incidents of discrimination against individuals in a particular protected class and show that these were the result of some policy or mechanism.") (citations omitted). While this prior conduct might be probative of the employer's manner of handling complaints and gender-based conduct in the workplace, it cannot form the base a separate or independent claim.[11]

Accordingly, Defendant's motion to dismiss any claim predicated solely upon conduct occurring before November 2, 2012 is granted.

### c. Sufficiency of the Hostile Work Environment Claims

Plaintiff alleges sufficient facts to present a plausible contention that the alleged workplace harassment was taken on account of her gender. *See* Am. Compl., ¶ 22 - ¶ 25 (alleging that she was denied a transfer and told by a Senior Trooper that "females don't belong on this job," that female troopers are "not capable of doing the same job as male troopers"); ¶ 26 ("Sgt. O'Brien's actions regarding the SP Moravia position excluding Plaintiff and awarding the position to a lesser senior male was discriminatory and retaliatory based on Plaintiff's gender."); ¶ 39 ("Plaintiff believes she has been singled out and treated differently in her employment and day to day activities by the NYS Police and,

---

[11] Plaintiff appears to concede this proposition, arguing that "Plaintiff alleges new facts concerning Sgt. Carmichael and Trooper Kidder only as a way to illustrate the history of sexual harassment, misconduct, adverse employment action and how it has continued up to and until recently; namely until 2014 when she was transferred to the Syracuse position." Pl. MOL, p. 4 (citing Am. Compl. ¶¶13-15).

11

specifically, her male supervisors, . . . because of her gender (female). Plaintiff believes that [her male supervisors] have treated her different than her male counterparts primarily because she is a female."); ¶ 53 ("That Defendant's male employees were not treated in the same manner as Plaintiff as Gallivan and Sgt. O'Brien treated other male employees differently than Plaintiff because Plaintiff was a female. The differentiation in treatment was on account of her gender."); ¶ 54 ("Sgt. O'Brien and Gallivan treated Plaintiff different from her male counterparts in creating a hostile work environment and in creating an adverse employment action against Plaintiff by purposefully giving Plaintiff negative performance evaluations because she failed to write a specific amount of tickets while working."); ¶ 58 ("This action by Defendant establishes retaliatory conduct in violation of Title VII based on Plaintiff's sex. Plaintiff has knowledge and information to believe that other male counterparts were not treated similarly and that she was singled out and discriminated because of her gender."). Although Plaintiff's allegations are conclusory, they are sufficient at this stage of the proceedings to allow the claims to proceed on the theory that the conduct was gender-based.[12] Accordingly, Defendant's motion on this ground is denied.

---

[12]Because challenges to the legal sufficiency of the hostile work environment claim (beyond challenges to the gender-based motivation for the creation of the work environment) were not presented in the instant motion, the Court offers no opinion as to whether the alleged conduct reaches the severity or pervasiveness requirement of such a claim. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004); *see also Alfano v. Costello*, 294 F.3d 365, 376 (2d Cir. 2002)("the twelve incidents cited by [plaintiff], taken together, are insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment"); *Williams v. Cnty. of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999) (plaintiff must show "more than a few isolated incidents" and that "evidence solely of sporadic" discrimination does not suffice) (quotation marks and citation omitted). The factual and legal sufficiency of this gender-based hostile work environment claim can be tested on a subsequent motion for summary judgment after discovery is conducted.

12

### d.  Gender-Based Discrete Act Claims

Plaintiff was granted leave to re-plead gender-based discrete act claims, but it is unclear whether she did.  Like the Complaint, the Amended Complaint is hardly a model of pleading clarity. The closest Plaintiff appears to come to pleading a gender-based discrete act claim is in the Fourth Cause of Action.  There, Plaintiff alleges:

> Defendants' supervisors O'Brien and Gallivan have treated Plaintiff differently because of her gender. O'Brien's "shacking up" remarks and Gallivan's treatment of Plaintiff of retaliation [*sic*] and demotions are gender based motivated animus.

 Am. Compl. ¶ 86.

However, Plaintiff asserts in her memorandum of law that the paragraphs about the "shacking up" incident "allege the factual basis in support of Plaintiff's sexual harassment claim and the creation of a hostile work environment." Pl. MOL., 6.   Thus, it does not appear that Plaintiff intended these allegations to be the basis of an independent discrete act claim.  Moreover, and assuming without deciding that the "shacking up" incident resulted in an adverse employment action such as a demotion, *see Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007); *Galabya v. New York City Board of Education*, 202 F.3d 636, 640 (2d Cir. 2000), neither the statement nor any employment action surrounding it were referenced in the EEOC Charge.

Further, the statement was allegedly made in "late 2011."  Am. Compl.  ¶ 49. Presuming that any adverse action was implemented shortly thereafter, any discrete act claim arising from the "shacking up" incident is outside the limitations period.  *See Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'  A party, therefore, must file a

charge within . . . 300 days of the date of the act or lose the ability to recover for it.").

Plaintiff does not allege any other plausible gender-based discrete act claim occurring within 300 days prior to her EEOC Charge, or occurring thereafter. Accordingly, Defendant's motion is granted, and all gender-based discrete act claims are dismissed.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss [dkt. # 44] is **GRANTED in part and DENIED in part**. The motion is granted in that all New York State Human Rights Law claims are **dismissed**, all discrete act claims occurring before November 2, 2012 are **dismissed**, and all gender-based discrete act claims are **dismissed.** The motion is denied in all other respects. The motion to stay discovery [dkt. # 44] is **denied as moot**.

**IT IS SO ORDERED**.

Date: March 25, 2016

_____
Thomas J. McAvoy
Senior, U.S. District Judge